AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Texas

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Inez Jonathan Leal (01) | ) |
| Luis Arturo Carrillo, Jr. (02) | ) Case No.   1:26-MJ-047-BU |
| Joseph Santos Carrillo (03) | ) |
| *Defendant(s)* | ) |

**FILED**
**June 24, 2026**
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 23-24, 2026 _____ in the county of _____ Taylor _____ in the _____ Northern _____ District of _____ Texas _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 846, 841(a) | Conspiracy to Distribute and Possess with the Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_Matthew L. Tusing, AUSA_

_____
*Complainant's signature*

Cody A. Mitchell, DEA Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   June 24, 2026

_____
*Judge's signature*

City and state:   Abilene, Texas

John R. Parker, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Cody A Mitchell, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, deposes and states:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Special Agent with the DEA, since June of 2019. During my career, I have conducted multiple criminal investigations concerning violations of the Controlled Substances Act, and have received ongoing training in conducting such investigations.

2.      My experience as a Special Agent includes, but is not limited to: conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, and the analysis of phone toll and financial records.  My familiarity includes: the means and methods drug traffickers use to import and distribute drugs; their use of cellular telephones to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions.  I also am familiar with how drug traffickers conceal, convert, transmit, and transport their drug proceeds, including but not limited to, using carriers to transport currency and proceeds, and using third parties to purchase or hold title to assets.

3.      This affidavit is being submitted for the limited purpose of establishing probable cause to secure an arrest warrant for Inez Johnathan Leal (LEAL), Joseph

Santos Carrillo (JOSEPH), and Luis Arturo Carrillo Jr. (CARRILO JR) (collectively, the "LEAL CONSPIRACY").   I have not included each fact known).  I have not included each fact known to me concerning this investigation. I have set forth only those facts I believe are necessary to establish probable cause that the LEAL CONSPIRACY violated Title 21, United States Code, Sections 841(a) and 846; to-wit: knowingly and intentionally possessed with the intent to distribute methamphetamine, a Schedule II controlled substance, and conspired with others to distribute methamphetamine, in the Abilene Division of the Northern District of Texas.

## TITLE 21, UNITED STATES CODE SECTION 841(a) DISTRIBUTION AND POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE

4.      Title 21, United States Code, Section 841, makes it a crime for anyone to possess a controlled substance knowingly or intentionally distribute or possess with intent to distribute it. In this case, the defendant distributed and possessed a controlled substance with the intent to distribute it.

5.      For a defendant to be guilty of possession with intent to distribute, the following must have occurred:

> *First*.   That the defendant knowingly distributed and possessed a controlled substance;
>
> *Second*.   That the substance was in fact a mixture and substance containing a detectable amount of fentanyl; and
>
> *Third*.   That the defendant distributed and possessed the substance with the intent to distribute it.

6.      To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

## TITLE 21, UNITED STATES CODE SECTION 846
## CONSPIRACY TO DISTRIBUTE AND POSSESS
## WITH INTENT TO DISTRIBUTE METHAMPHETAMINE

7.      Title 21, United States Code, Section 846 makes it a crime for any person to conspire with one or more persons to distribute or possess with intent to distribute fentanyl. For a defendant to be guilty of conspiracy to distribute or possess with intent to distribute, the following must have occurred:

*First*.    That two or more persons, directly or indirectly, reached an agreement to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine;

*Second*.    That the defendant knew of the unlawful purpose of the agreement; and

*Third*.    That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose.

8.      One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

9.      The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme. Similarly, the government need not prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out, nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

10.     Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. A person who has no knowledge of a conspiracy, but who happens to act in a way that advances some purpose of a conspiracy, does not thereby become a conspirator.

## PROBABLE CAUSE

11.     In last quarter of 2025, the Abilene Police Department received multiple tips regarding illegal narcotics distribution in Abilene Texas. Agents with the Abilene Police Department (APD) Narcotics Division investigated and performed surveillance on potential targets distributing methamphetamine. Agents also followed up on these tips and what they had observed and learned and were able to cultivate confidential sources (CS) who provided information on a methamphetamine Source of Supply (SoS) in Abilene, Texas, identified as Inez Jonathan Leal (LEAL)

## INITIAL CONTROLLED BUY INVOLVING LEAL

12.     At the beginning of 2026, APD agents worked with a Confidential Source (CS1) to conduct a controlled delivery of approximately one-half kilogram of methamphetamine from Inez Leal in Abilene, Texas. Agents observed LEAL exit his residence at 2850 Melissa Ln Abilene, Texas (Premises 2) get in one of his registered vehicles and drive to the area of 1242 Victoria St. Abilene, Texas, the suspected "stash house" (Premises 1). Agents confirmed the vehicle, a 2003 white Chevrolet S10 with Texas license plate RPB9442, was registered to LEAL.

13.     CS1 was contacted by LEAL and given a location to meet in Abilene, Texas. CS1 arrived at this location and agents observed LEAL arrive at this meet location. CS1 entered the vehicle operated by LEAL, and LEAL provided CS1 with a package of methamphetamine. CS1 then met agents at a predetermined location and provided agents with the package of white crystal-like substance. Agents performed a field test on the substance, which tested positive for methamphetamine. This controlled delivery was captured on audio and video recording and Agents performed surveillance to confirm the identity of LEAL.

14.     In June of 2026, a separate Confidential Source (CS2) also informed Agents of LEAL being a SoS in Abilene, Texas. CS2 knew LEAL to distribute large amounts of methamphetamine and would describe LEAL as a kilogram dealer. CS2 knew LEAL to supply other large distributors in the Taylor County area.

## ARREST OF LUIS CARRILLO

19.     In June of 2026, agents performed continuous surveillance of Premises 1 (stash) and Premises 2 (residence).  Agents knew from prior controlled purchases of narcotics, as well as information provided by tips and cooperators, that LEAL sold narcotics with quick turnaround, meaning agents knew he stored the narcotics somewhere in Abilene.

20.     In the morning of June 23, 2026, agents watched a known narcotics trafficker arrive at Premises 1 (stash). Agents knew that LEAL was not at Premises 1 at the time and did not live at Premises 1, so, agents conducted close-watch surveillance on Premises 1 (stash) and Premises 2 (residence).

21.     At approximately 1123 hours, agents saw LEAL exit Premises 2 (residence) holding a black backpack.  LEAL left Premises 2 (residence) with this backpack in his vehicle. LEAL traveled directly to, and arrived at, Premises 1 (stash) without making any stops.

22.     Approximately 20 minutes later, a white Toyota SUV bearing Texas license plate XZM7472 arrived at Premises 1 (stash). The vehicle is registered to a rental company.

23.     Agents saw the male driver, later identified as LUIS ARTURO CARRILO, JR. (CARRILLO JR) exit the rental vehicle and walk to the back of the truck. Agents saw CARRILLO JR unload two (2) large duffle bags from the truck and take them inside of Premises 1 (stash). I also know though my training and experience that large duffle bags are commonly used to conceal illegal narcotics during transportation.

24.     Approximately three hours later, LEAL and CARRILLO JR exited Premises 1 (stash). Both men then left at the same time in their respective vehicles. LEAL did not have the black backpack.  LEAL traveled straight back to Premises 2 (residence) without stopping.  He entered the residence without the black backpack.

25.     Agents performed surveillance on the white rental Toyota SUV. CARRILLO JR, in the Toyota SUV, left Abilene, Texas, that afternoon.

26.     At approximately 1812 hours, agents with the Texas Department of Public Safety (DPS) performed a traffic stop on CARRILLO JR, who was driving the white rental SUV in Eastland County, Texas.  A K-9 unit was on the scene.  A canine performed a free air sniff inspection around the vehicle and signaled positive for the presence of narcotics.  Agents conducted a probable cause search of the vehicle.

27.     Inside the vehicle, agents discovered LEAL's black backpack.  Inside the backpack, agents discovered approximately $30,000 in U.S. currency.  The currency was bundled and carried in a manner consistent with narcotics trafficking and money laundering, specifically, every band of cash was an increment of a thousand dollars, separated by 50, 20s, and then compiled in a $5,000 bundle.  Agents found six bundles free standing, meaning not in bank envelope or bank bag. The backpack matched the backpack that agents saw LEAL carrying out of Premises 2 (residence).

28.     CARRILLO JR told agents that he was trying to catch a flight back to California.  He told agents that he flew into Texas earlier that day.

29.     On June 24, 2026, the Court authorized a search warrant to search Premises 1 and Premises 2.

**TRAFFIC STOP OF JOSEPH SANTOS CARRILLO AND PREMISES 1 SEARCH**

30.     On June 24, 2026, at approximately 1212 hours, agents conducted surveillance of Premises 1 (stash) and observed JOSEPH SANTOS CARRILLO (JOSEPH) depart the residence in a grey Ford SUV bearing TX license plate: VGB-4953. Agents then executed an immediate traffic stop on JOSEPH in his grey Ford SUV.

31.     Agents then executed the search warrant for Premises 1 (stash).  Inside of Premises 1 (stash), agents discovered and seized, among other items:

- Approximately eight (8) kilograms of a white powdery substance that field tested positive for cocaine;
- Thirty (30) kilograms of a clear crystal-like substance, that tested positive for methamphetamine
- 93 bottles or 25,854 kilograms of Kodel labeled codeine cough syrup;
- Approximately 17,670 Farmapram labeled alprazolam pills or approximately 4.5 kilograms.
- Approximately 75 pounds of green processed marijuana and THC products.

*32.*     Additionally, Agents seized a Kimber 9mm, handgun ,serial number SCB0066669.  Agents also discovered and seized numerous identification documents for JOSEPH in Premises 1.  Agents discovered the methamphetamine in a bedroom closet inside numerous, rolling suitcase bags, similar to luggage.  There was also an open duffle bag in the closet and an open box containing narcotics, easily visible. There was a vacuum sealer on the bed.  Agents found lots of packing material and baggies in JOSEPH's bedroom.   JOSEPH is the only known residence of Premises 1.

**TRAFFIC STOP OF LEAL AND SEARCH OF PREMISES 2**

33.     On the same day at approximately 1243 hours, agents conducted surveillance of Premises 2 and observed LEAL depart the residence in a white S-10

bearing TX license plate: RPB-9442. Agents then executed an immediate traffic stop on LEAL in his S-10 truck.

34.    Agents then executed the search warrant for Premises 2 (residence). Inside of Premises 2 (residence), agents discovered and seized, among other items,:

- Approximately 144 alprazolam pills.
- a Berretta Cheeta, 380. Auto hand-gun Serial number Y028981X.
- a Glock 48 9mm handgun serial number BPZS963.
- A Kimber Micro 9 EZV 9mm handgun Serial number STB0021587.
- a Glock 43x 9mm Serial number AKNc755.
- Approximately $6,000 of bulk U.S. Currency, bundled and carried in a manner consistent with narcotics trafficking and money laundering.
- Two, 10 ounce silver bars.
- A money counter.

35.    Agents detained LEAL and JOSEPH. Agents have also detained CARILLO JR.

## SUMMARY

36.    Based upon the above facts and circumstances, I submit there is probable cause to believe that Inez Johnathan Leal (LEAL), Luis Arturo Carrillo Jr. (CARRILO JR) and JOSEPH SANTOS CARRILLO (JOSEPH), collectively, the "LEAL CONSPIRACY", knowingly and intentionally possessed with the intent to distribute methamphetamine, a Schedule II controlled substance, which is in violation of Title 21, United States Code, Section 841(a) and also conspired with each other and others to distribute methamphetamine, which is in violation of Title 21, United States Code, Section 846.

Cody A. Mitchell, Special Agent
Drug Enforcement Administration

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 this 24th _____ day of June 2026.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE